UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

NOLAN KEITH LUCAS,

        Plaintiff,        Case No. 2:06-cv-209

v.        Honorable Robert Holmes Bell

PATRICIA L. CARUSO, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Nolan Keith Lucas #180178, an inmate currently confined at the Ojibway Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against the following employees of the Michigan Department of Corrections (MDOC): MDOC Director Patricia Caruso, Kinross Correctional Facility (KCF) Warden Linda Metrish, Dr. Stallman, Terry Malloy, Dr. William Borgerding, Dr. Eric J. Siesel, Unknown Doctor, and Unknown Parties. He complains of events that occurred at KCF and the Hiawatha Correctional Facility (HTF).

Plaintiff's complaint alleges that in late 2004, he received a prescription for the pain medication Indocine from a doctor at the HTF. The doctor failed to explain to Plaintiff the possible side effects of Indocine. Subsequently, in December 2004, Dr. Stallman renewed the prescription and increased the dosage from two to three times daily. Dr. Stallman likewise failed to inform Plaintiff of the possible side effects of the medication. In February 2005, after Plaintiff was transferred to KCF, he began experiencing problems with the vision in his right eye. He was seen by Dr. Siesel, a KCF optometrist. Although Plaintiff explained all of his symptoms, informed the

doctor that he was taking Indocine, and requested that his eye be dilated and examined, Dr. Siesel's examination consisted of having Plaintiff read from the eye chart. Dr. Siesel prescribed stronger prescription glasses.

The new glasses did not rectify Plaintiff's vision problems, and he was seen again by Dr. Siesel in June 2005. Dr. Siesel's examination of Plaintiff's dilated eye revealed Branch Retinal Vein Occlusion. Plaintiff was referred to the Grand Traverse Opthlmology Clinic, where he was allegedly told that had proper procedures been followed at his initial visit with Dr. Siesel, his vision loss could possibly have been prevented. At his final appointment at the Grand Traverse Optholmology Clinic on March 21, 2006, he was informed that his vision loss was significant, and that he would forever be partially blind in his right eye.

Plaintiff claims a violation of his Eighth Amendment rights. For relief, he requests damages in the amount of five million dollars.

A review of the record in this case reveals that this court issued an opinion and order granting a motion to dismiss on March 7, 2008, and dismissing the action in its entirety. (Docket #130 and #131.) Plaintiff's subsequent motion for reconsideration was granted with regard to Defendant Siesel on May 2, 2007.

Presently before the Court is Defendant Siesel's Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that

there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

        Defendant Siesel claims that he is entitled to summary judgment in this case because his actions did not violate the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

        A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the

- 3 -

plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted).  Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim.  *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).  This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering.  *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).  Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. Apr. 27, 2001); *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at * 4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at * 2 (6th Cir. Apr. 4, 1997).

Defendant Siesel attaches copies of his affidavit, progress notes addressing Plaintiff's optometric care, laboratory results, and the deposition testimony of Daniel D. Thuente, M.D., in support of his claim.  In his affidavit, Defendant Siesel attests that he saw Plaintiff at KCF on three occasions, February 15, 2005, June 21, 2005, and August 9, 2005.  Defendant Siesel states that Plaintiff did not evidence a branch retinal vein occlusion (BRVO) when he saw him on February 15,

2005. However, when Plaintiff saw Defendant Siesel on June 21, 2005, he complained of "film" over his right eye. Upon examination, Defendant Siesel diagnosed Plaintiff as having a BRVO in his right eye along the superior-temporal arcade with no macular edema. Defendant Siesel further attests that a BRVO is essentially a blockage of a portion of the circulation that drains the retina of blood. The blockage causes a back-up of pressure in the capillaries, which leads to hemorrhaging and fluid leakage on the retina. The occlusion usually occurs at a site where an artery and vein cross and the occlusion site determines the extent or distribution of the hemorrhage. There is no known medical treatment or cure for a BRVO. (*See* January 22, 2008 affidavit of Defendant Siesel, ¶ 4 - ¶ 10.)

Defendant Siesel states in his affidavit that Plaintiff had no signs of swelling and no macular edema of the right eye on June 21, 2005. However, during the follow-up visit on August 9, 2005, Plaintiff had resolving hemorrhages, but he also had possible macular involvement with macular edema. Based on these findings, Defendant Siesel referred Plaintiff to the Grand Traverse Ophthalmology Clinic for retinal evaluation. (*See* January 22, 2008 affidavit of Defendant Siesel, ¶ 11 - ¶ 12.)

Dr. Thuente testified in his deposition that his partner, Dr. Von Kulajta, saw Plaintiff on two occasions and had reviewed Plaintiff's chart from the Grand Traverse Ophthalmology Clinic. Dr. Thuente saw Plaintiff on August 23, 2005, and performed a full comprehensive ophthalmology examination. Plaintiff had visual acuity of 20/70 in the right eye and was complaining of spider web or floaters since January of 2005. A dilated fundus revealed BRVO with edema in the macula of the right eye and a follow-up appointment was scheduled for approximately one month later. (*See* deposition testimony of Dr. Thuente, pp. 10-11.)

Dr. Thuente testified that the cause of a BRVO is often unknown and that medication is not usually listed in terms of the usual causes of BRVO. Dr. Thuente examined Plaintiff on September 20, 2005, and found that the visual acuity in the right eye was 20/60, eye pressures were normal, and there was a small pupil defect called an afferent pupillary defect that implied some damage to the retina or nerve in the right eye. In addition, Dr. Thuente also stated:

> The slit lamp microscope was normal. And a fundus examination, which is a dilated examination of the right eye, showed the continued hemorrhages that I referred to previously. And in my record I drew a series of six or eight horizontal blue lines which correspond to the edema or swelling that Dr. Von Kulajta had seen one month prior. The retina also had what are referred to as shunt vessels. And shunt vessels are vessels where the blood is trying to re-profuse an area of the eye, but it's not neovascularization which can be a sign of a worsening of a condition. And I specifically wrote in the chart, "No neovascularization," looking for that specific problem.

(*See* deposition testimony of Dr. Thuente, pp. 12-15.)

Dr. Thuente also stated that he recommended a laser treatment at this time, but that Plaintiff declined the treatment. Dr. Thuente indicated that laser treatment was for the purpose of decreasing the swelling, but that it could not cure a BRVO. Dr. Thuente stated that there is no known cure for BRVO. Blood work was performed on Plaintiff, but the results of those tests were not significant to the diagnosis or treatment of the BRVO. Plaintiff was seen on one other occasion, March 22, 2006, where it was observed that Plaintiff's condition was similar to the prior visits but the swelling had resolved, so that laser treatment was no longer recommended. (*See* deposition testimony of Dr. Thuente, pp. 15-17, 19-20.) Dr. Thuente stated that his records, which were filled out by Plaintiff, did not show that Plaintiff was on Indocine, but that such information was irrelevant and would not have altered the diagnosis or treatment recommendations. Finally, Dr. Thuente opined that Defendant Siesel's treatment of Plaintiff was appropriate and reiterated that

ophthalmologists and optometrists do not and cannot prevent BRVO. (*See* deposition testimony of Dr. Thuente, pp. 22-25.)

Plaintiff's medical record, which is also attached to Defendant Siesel's brief, supports the deposition testimony of Dr. Thuente, as well as the assertions of Defendant Siesel. Based on the record in this case, it appears that Plaintiff was seen on numerous occasions for his eye condition, and was offered treatment to alleviate the swelling in his right eye, which he refused. However, ultimately Plaintiff was the victim of a condition which is neither preventable nor curable. In the opinion of the undersigned, this is a situation in which Plaintiff "has received some medical attention and the dispute is over the adequacy of the treatment." *Westlake*, 537 F.2d at 860 n.5. As noted above, "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* Therefore, the undersigned recommends that Defendant Siesel be granted summary judgment in this case.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant Siesel's motion for summary judgment. Accordingly, it is recommended that Defendant Siesel's motion for summary judgment and for decision on the motion for summary judgment (docket #105 and #145) be granted and that this case be dismissed in its entirety. In addition, the undersigned recommends that Plaintiff's motions to clarify, for reconsideration regarding reinstatement of dismissed defendants, and for order to assume supplemental jurisdiction (docket #147 and #152) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

        /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   July 31, 2008